S. H. ALLEN, use of Todd and Krum vs. ALEXANDER J. P. GARESCHE, Adm'r. of Geo. Anson, dec'd.

The authorities cited by the defendants counsel fully sustain him in his view of the case. Let the judgment be reversed.

SIMON H. ALLEN, use of Todd and Krum *vs.* ALEXANDER J. P. GARESCHE, Adm'r. of George Anson, dec'd.

Where no instructions are given, or where those given are correct, the testimony must greatly preponderate against the finding of either the court or jury to warrant the interposition of the supreme court.

### APPEAL FROM ST. LOUIS CIRCUIT COURT.

#### STATEMENT OF THE CASE.

This was a proceeding by Allen for the proving up and obtaining an allowance in the pro_ bate court for the county of St. Louis against the estate of George Anson deceased.

There was judgment for Allen in the probate court from which Garesche appealed to the circuit court for the county of St. Louis.

The claim of Allen as filed and presented in the probate court was as follows, to-wit:

Estate of George Anson deceased, to Simon H. Allen, to the use of Albert Todd and John M. Krum :

| | |
|---|---:|
| July 6, 1846. To 100 shares of stock in the Pell Mining Company sold to Charles Collins, ············································································· | $600 |
| To 200 shares of stock in the Pell Mining Company, sold to S. M. Edgell & Co., as per contract, ································································· | 1000 |
| To this amount, being one half of note and interest paid to Presbury & Co., which note is the joint note of George Anson and S. H. Allen for $365 74, dated May 30th, 1846, due in 30 days, and paid by S. H. Allen, Dec. 24th, 1846 ············ | $200 |
| Total·················································································· | $1,800 |

To this claim the adm'r. filed, before the probate court, the following set-off:

Simon H. Allen, to estate of Geo. Anson, debtor :

| | |
|---|---:|
| 7 Nov., 1845. To amount loaned Mr. Allen per Mr. Stout···· ························· | $50 00 |
| 4 February, 1846. To amount received per Geo. Anson from Anson & Co········· ····· | 100 00 |
| 29 April, 1846. To amount borrowed of Geo. Anson ····· ················· ····· ····· | 30 00 |
| 9 March, 1846. To amount paid by Anson to Guild & Dorwards on your order····· | 100 00 |
| " " half note of $126 36 and interest···· ····· ····· ···· ···· ····· | 76 44 |
| Total ···· ····· ···· ···· ···· ···· ···· ···· ···· ····· ···· ····· ····· | $356 44 |

Upon the trial in circuit court, S. M. Edgell in behalf of plaintiff testified that Anson in his life time told him, witness, that the 100 shares charged in the above account belonged to Al-

S. H. ALLEN. use of Todd and Krum vs. ALEXANDER J. P. GARESCHE Adm'r. of Geo. Anson dec'd.

len; that he, Anson, sold same to Collins and was going to invest the proceeds of the sale thereof, made to Collins in real estate in the city of St. Louis for his own use, and that he got $600 for it—that the name of Anson to a certain writing shown him was genuine—said writing was as follows to-wit:

"St. Louis, July 6th, 1846.

S. H. Allen, Esq., Sir:—I have sold to S. M. Edgell, 400 shares in the Pell Mining Co., half of which belongs to you, and I will account to you for the same in accordance with the contract with him. Respectfully,

GEORGE ANSON."

Edgell further testified, that he advanced to Anson $1,000 on said 400 shares, and that it was to be his own if he choose upon his paying $1,000 more, that Anson said he was going to lay this money out in improvements for said company, but he had good reason to believe he did not. In support of the third item of said claims, the following note was produced by Allen, to wit:

$365, 74-100ths. St. Louis, May 30th. 1846.

Thirty days after date, we promise to pay to the order of Presbury & Co., three hundred and sixty-five 74-100ths. dollars, for value received, negotiable and payable without defalcation or discount with interest from maturity at the rate of ten per cent, per annum.

GEO. ANSON.
S. H. ALLEN."

The signatures were proved by Edgell.

For the defence, it was proved that said Allen and Anson, from about October, 1845, to Sept., 1846, (when Anson died,) were partners in certain lease hold property in Hardin county Illinois, with lead mines thereon, and in the manufacture thereof,. and the sale of merchandize there. That until January, 1846, the partnership style was "Anson & Co.," that then the business was formed into a joint stock company, converting all the property into stock, dividing it into shares, investing the title in trustees, and organizing the company with a President, Vice President, Secretary, Treasurer and Board of Directors. The company was called the "Pell Mining Company." Anson and Allen with others, whom the witness Edgell did not know, owned shares in said stock. The defendant, to prove his set off, produced certain writings as follows, to wit:

"Mr. Geo. Anson, Dear Sir:—

Pleas pay to Messrs. Guild & Domart, one hundred dollars, and I will settle the same on my return. Your ob't. serv't,

S. H. ALLEN.

St. Louis, March 9, 1846."

"Borrowed and received of Geo. Anson, thirty dollars for value received, payable on demand. S. H. ALLEN.

April 29, 1846."

Rec'd. of Messrs. Geo. Anson & Co., one hundred dollars on acc. of Geo. Anson.

S. H. ALLEN.

St. Louis, February 4th, 1846."

"Pell Mines, Harden Co., January 24, 1846.

Sixty days after date for value received, we promise to pay to Vermont Allen or order one hundred and twenty-six 36-100ths. dollars, without defalcation or discount $126,36.

GEO. A. } Sur names
S. H." } torn off.

"S. H. Allen,
To Pell Mining Co., Dr.

Cash rec'd. of S. M. Edgell···· ····· ···· ···· ···· ····· ···· ····· ···· ····· ····· $500 00
For premium on same···· ····· ···· ···· ···· ···· ···· ····· ···· ····· ····· ···· 4 75

Total···· ····· ····· ···· ···· ···· ····· ····· ···· ····· ····· ····· ····· ···· $504 75

S. H. ALLEN, use of TODD & KRUM, vs. ALEX. J. P. GARESCHE adm'r. of GEORGE ANSON dec'd.

CR.

| | |
|---|---|
| By cash paid Kenedy and Field | $ 18 00 |
| "    "    delivered Geo. H. Peck | 400 00 |
| "    "    paid Geo. L. Fleyer | 70 00 |
| "    Expense | 15 00 $503 00 |
| Balance | $1 75" |

"ROSE CLAIR, HARDEN Co. ILL., Nov. 15, 1845.

Mr. VERMONT ALLEN, Dear Sir:—

In consideration of a lease expected to us by you this day, we hereby, agree to advance your proposition of money to open and carry on the operations of the Pell Minning Company.            Respectfully,

GEO. ANSON.
SIMON H. ALLEN."

No evidence was introduced on either side, to show any settlement or account between the parties as partners.

The signatures to the above writings were proved.

This was all the evidence in substance.

At the request of Allen, the court declared the law to be.

1. "The plaintiff asks the court to declare the law to be, that if the claims presented for allowance in this case by the plaintiff or any of them, are individual between said plaintiff and Anson, then the fact that Allen and Anson having been in partnership with others, is no defence to such claims." The court of its own motion declared the law to be as follows, to wit:

2. "But if not individual as aforesaid, but in effect partnership; that is to say, if they grew out of and are connected with the opening and establishing the Pell mining company, or the carrying on and management of its business affairs, and the plaintiff and intestate therein were jointly interested, and the affairs of said concern are not settled up and closed, but are still open, the plaintiff is not entitled to recover in this case.

To this the plaintiff duly excepted.

The plaintiff duly moved for a new trial for these reasons:

1. Because the verdict is against evidence.

2. Because the court erred in its declaration of the law contained in instruction numbered "2." The court refused to grant the motion, to which the plaintiff excepted, and appealed to this court.

And to reverse said judgment assigns the following errors:

1st. That said circuit court erred in declaring the law upon the evidence in this case.

2nd. That the court erred in refusing to declare the law without qualifications as prayed for by plaintiff.

3rd. That said court erred in overruling the plaintiff's motion for a new trial.

4th. That the court erred in rendering judgment for defendant.

## TODD & KRUM for plaintiff.

The only questions presented on the record in this case, is

1st. Whether the court erred in the instruction or declaration of law by the court.

2nd. Whether the court erred in refusing to set aside the verdict and grant a new trial.

The plaintiff in error insists that the instruction or declaration of law of the court below was erroneous, because there was no evidence proving or tending to prove that the claim of the plaintiff, or any part of it, was connected with or grew out of the co-partnership of Anson & Co., or the Pell mining company, or the carrying on and management of the business affairs of said company.

The evidence in the case closely shows the liabilities which go to make up the claim of the plaintiff were individual and not connected with or growing out of the co-partnership existing between plaintiff and defendant's intestate, and the set-off was also individual. The finding of the court, therefore, should have been for plaintiff, and the court below should have set aside the verdict.

RYLAND, Judge, delivered the opinion of the court.

The main question in this case, involves the existence of the partnership between the plaintiff, Allen, and the intestate, Anson, and the accruing of the indebtedness of Anson to said Allen on the partnership transactions.

Upon a careful examination of the facts set forth in the above statement (and the statement is warranted by the bill of exceptions) I have my serious doubts as to this being a partnership transaction, but the court below having found from the evidence such to be the case; and not being myself entirely satisfied to the contrary: I am unwilling to disturb that finding:

In reviewing verdicts of juries or the finding of facts by a court, if there be contradictory evidence, or if there be evidence tending to establish facts that might induce a finding by a court or jury for either one of the parties, or that might leave a doubt for which party they should find; this court in all such cases will refuse to enterfere, by granting a new trial, if there be no error in law conducing to such verdict. If there be no improper instructions given, or if there be no instructions given, then the testimony must greatly preponderate against the finding, to warrant the interposition of this court, especially when the court, below, who heard the testimony, who saw the witnesses, who had all the facts fully before it, both as regards matter and manner, has refused to grant a new trial.

The question with us is not whether we would have given such a verdict, not whether we are satisfied with such finding, but whether there is evidence which may support or which will warrant such finding. We find no fault with the declaration of the court below, as to the law.

The court gave the proper instruction as asked for by the plaintiff, and also the instructor, of its own motion, sets forth the law correctly. All that the plaintiff can complain of is the improvident finding of the court, a jury might have found otherwise, and I should have been just as well satisfied; but still I must decline to · interfere with the present finding, for the reasons above set forth. The other Judges concurring, ·the judgment of the court below is affirmed.